# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., a ) <br> Georgia corporation, ) <br> ) <br>     Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> USA NUTRACEUTICALS GROUP, INC. ) <br> ULTRA-LAB NUTRITION, INC. ) <br> d/b/a BEAST SPORTS, and ) <br> ANTHONY ALTIERI, an individual ) <br> ) <br>     Defendants. ) <br> _____ ) | Case No. _____ |

## COMPLAINT

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through the undersigned counsel of record, and for its Complaint against the Defendants USA Nutraceuticals Group, Inc. ("USA"); Ultra Lab Nutrition d/b/a BEAST SPORTS ("BEAST"); and Anthony Altieri ("Mr. Altieri"), collectively referred to as "Defendants", states as follows:

## INTRODUCTION

1.    Hi-Tech is the owner of the DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products manufactured and sold as dietary supplements. Ultra Lab, at the direction of Mr.

Altieri, willfully sold and continues to sell illegal and fraudulent products that compete against Hi-Tech's products. Defendants' actions are designed to and will cause unfair competition under the federal Lanham Act and Georgia's Deceptive and Unfair Trademark Practices Act and common law unfair competition.

## **THE PARTIES**

2.     Hi-Tech is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071.

3.     Hi-Tech sells, distributes, and manufactures high quality dietary supplement products in the State of Georgia and throughout the United States.

4.     Defendant USA Nutraceuticals Group, Inc. is a Florida corporation with an address at 3100 N.W. 2nd Avenue, Suite 213, Boca Raton, Florida 33431.

5.     Ultra Lab Nutrition, Inc., d/b/a Beast Sports is a Florida corporation with an address at 3100 N.W. 2nd Avenue, Suite 213, Boca Raton, Florida.

6.     Upon information and belief, Mr. Altieri is the chief executive officer, owner, and president of USA and BEAST.

7.     Upon information and belief, Mr. Altieri authorizes, participates in, directs, controls, causes, ratifies, and/or is the moving force behind the selection and sale and distribution of the Infringing Products and/or is personally sells the Infringing Products.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question).

9.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1121 (Lanham Act claims).

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338 (unfair competition claims).

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1367 (supplemental jurisdiction).

12.    This Court has subject matter jurisdiction over this action pursuant to, and 28 U.S.C. § 1332 (diversity) as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

13.    Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Hi-Tech's claims arising from the laws of the State of Georgia as those claims are substantially related to those causes of action over which the Court has original jurisdiction.

14.    This Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A. §9-10-91 because one or more of the Defendants are doing business in this judicial district and/or have committed tortious acts within this

judicial district including unfair competition, mail and wire fraud as a part of a Georgia RICO violation among other wrongful and unlawful acts.

15.   This Court therefore has jurisdiction over the Defendants pursuant to the provisions of the Georgia long-arm statute.

16.   This Court also has personal jurisdiction over Defendants because they purposefully directed and targeted their activities, as set forth herein, at Georgia resident Hi-Tech, and the effects of those activities arose in Georgia.

17.   By way of further example and without limitation, Defendants have purposefully and voluntarily placed the Infringing Products and fraudulent supplements into the stream of commerce with the knowledge, understanding, and expectation that such Infringing Products would and will be purchased in the Northern District of Georgia, and the products were and are actually purchased in the Northern district of Georgia.

18.   Venue is proper under 28 U.S.C. § 1391 (b) in that one or more of the Defendants are doing and transacting business within this judicial district.

19.   Venue is also proper in that Defendants have committed the tortious acts complained of herein in this judicial district of the State of Georgia.

## FACTUAL BACKGROUND

## I.    Hi-Tech and Its Sports Nutrition Products

20.    Hi-Tech is a producer of high quality dietary supplements, including numerous products designed for muscle and body building, such as testosterone boosters, muscle-gainers, muscle preservation products, pre-workout products, amino acids, and legal hormone boosters.

21.    Hi-Tech's products include DIANABOL®.

22.    Hi-Tech's products include ANAVAR®.

23.    Hi-Tech's products include BULASTERONE®.

24.    Hi-Tech's products include PHOSPHAGEN.

25.    Hi-Tech's products include NITROPRO®.

26.    Hi-Tech's products include SOMATOMAX®.

27.    Consequently, Hi-Tech has developed substantial recognition among the consuming public for its high quality products sold under its DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® trademarks and enjoys extensive goodwill associated with these products.

28.    Hi-Tech distributes, markets and sells DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® in the State of Georgia and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers.

29.   Hi-Tech has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products. Hi-Tech markets and promotes its dietary supplements, including DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® through many types of advertising media including printed brochures and flyers, magazine advertisements, web pages, online advertisements, and distributors' catalogs. As a result, Hi-Tech's DIANABOL® product and brand has established substantial and valuable goodwill among consumers of dietary supplements.

30.   Ultra Lab manufactures and distributes fraudulent products such as THE BEAST Anabolic Activator and HGC Human Growth Complex which are commercial competitors to Hi-Tech's DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products as both products are muscle building dietary supplements and the products directly compete against each other and travel in the same trade channels.

## II.   Ultra Lab and Its Sports Nutrition Products

31.   Ultra Lab promotes and markets THE BEAST Anabolic Activator with claims that it increases muscle mass and strength though homeopathic means and is a natural, safe and legal combination of 24 powerful ingredients.

32.     Ultra Lab also claims that since 1996 THE BEAST Anabolic Activator has been their #1 selling product.

33.     Ultra Lab claims that thousands of bodybuilders and athletes worldwide have used the formula as a safe and effective alternative to illegal anabolics.

34.     Ultra Lab claims that THE BEAST Anabolic Activator is a natural, safe and legal combination of 24 powerful ingredients.

35.     THE BEAST is supplied in a 6 week cycle and is specifically formulated to support muscle, mass, strength and endurance.

36.     Ultra Lab claims that THE BEAST Anabolic Activator has helped thousands of athletes worldwide achieve their goals without the adverse side-effects associated with other products and anabolic agents.

37.     Ultra Lab claims that the BEAST formula contains several hormonal secretagogues known as sarcodes.

38.     Ultra Lab claims that combined with resistance training, these sarcodes aid and support optimal hormonal release which is especially vital to the weight-training athlete.

39.     Ultra Lab claims that THE BEAST Anabolic Activator is indicated for those individuals seeking to increase muscle mass and strength though homeopathic means and the product is to be used in accordance with standard homeopathic indications for self-limiting conditions.

40.    Ultra Lab labels its products with Indications and Use as follows: "THE BEAST Anabolic Activator is indicated for those athletes involved in extreme resistance training such as bodybuilders, powerlifters, and other weight-training athletes. The product should be used within the scope of homeopathic indications for self-limiting conditions. Administration is through sublingual solution. Recommended use is 3 sprays orally, hold in the mouth for one minute, then swallow. Repeat 3 times daily. Desirable times to use the product would be before and after physical activity and at bedtime. On non-workout days use in the morning, afternoon and at bedtime. Always avoid food and hot beverages 15 minutes before and after administering the product."

41.    Ultra Lab represents to the consuming public that the ingredients for THE BEAST Anabolic Activator are as follows: Somatotrophine (Growth hormone) 6C, Gonado stimuline 6C, Chorionic Gonadotrophine 6C, Folliculostimuline 6C, Adrenocorticotrophine 9C, Thyroidinum 6C, Adrenalinum 6C, Progesterone 9C, Orchitinum 6C, Dopamine 6C, Acetylcholine 6C, RNA 6C, DNA 6C, ATP 6C, Leucine 4C, Isoleucine 4C, Valine 4C, Glutamine 4C, Estrone 12C, Estradiol 12C, Cortisone 12C, Saw Palmetto 3C, Tribulus Terrestris 3C, Insulinum 6C.

42.    Human chorionic gonadotropin (HCG) is a hormone produced by the human placenta and found in the urine of pregnant women.

43.    HCG is FDA-approved for the treatment of select cases of female infertility and hormone treatment in men.

44.    FDA-approved HCG products are only available in injection-form and require a prescription from a licensed medical professional.

45.    There are currently no FDA-approved HCG products for weight loss or muscle building.

46.    HCG has not been demonstrated to be effective therapy in the treatment of obesity.

47.    There is no substantial evidence that HCG increases weight loss.

48.    The labeling for the "homeopathic" HCG products states that each product should be taken in conjunction with a very low calorie diet (VLCD). Consumers on a VLCD are at increased risk for side effects including gallstone formation, electrolyte imbalance, and heart arrhythmias. A VLCD should only be used under proper medical supervision.

49.    At this time, all drug products claiming to include "homeopathic" HCG are illegally marketed. See http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/MedicationHealthFraud/ucm281834.htm

50.    HCG was first promoted for weight loss in the 1950s. It faded in the 1970s, especially when it became apparent that there was a lack of evidence to

support the use of HCG for weight loss. The diet has become popular again and FDA and FTC have taken enforcement actions on illegal HCG products. According to the FDA..."You cannot sell products claiming to contain HCG as an OTC drug product. It's illegal." says Brad Pace, team leader and regulatory counsel at FDA's Health Fraud and Consumer Outreach Branch. "If these companies don't heed our warnings, they could face enforcement actions, legal penalties or criminal prosecution."

51.     Elisabeth Walther, a pharmacist at FDA, explains that the agency does not evaluate homeopathic drug products for safety or effectiveness, and is not aware of any scientific evidence that supports homeopathy as effective. However, those that meet certain conditions set by FDA can be marketed. A reference document called the Homeopathic Pharmacopoeia of the United States lists active ingredients that may be legally included in homeopathic drug products. "HCG is not on this list and cannot be sold as a homeopathic medication for any purpose," Walther says.

52.     FDA-approved uses for *prescription* HCG products include female fertility and select hormonal treatment in males, and FDA has not approved prescription HCG for any other uses, including weight loss.

53.     Current scientific evidence does not support the claim that HCG is safe and effective for weight loss or for the treatment of obesity.

54.    In fact, FDA labeling for the approved HCG drug products requires the following statement about the use of HCG for weight loss:

> "HCG has not been demonstrated to be effective adjunctive therapy in the treatment of obesity. There is no substantial evidence that it increases weight loss beyond that resulting from caloric restriction, that it causes a more attractive or 'normal' distribution of fat, or that it decreases the hunger and discomfort associated with calorie-restricted diets."

55.    "THE BEAST Anabolic Activator" is properly classified as an unapproved new drug in violation of sections 301 and 505 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. §§ 331 and 355] and is misbranded in violation of sections 503 and 301 of the Act [21 U.S.C. §§ 353 and 331]. It is also not labeled correctly to be a Homeopathic product.

56.    In addition, the product is unlawful under the FTC Act, 15 U.S.C. § 41 *et seq.,* in that it is advertised as a product can prevent, treat, or cure human disease unless you possess competent and reliable scientific evidence, including, when appropriate, well-controlled human clinical studies, substantiating that the claims are true at the time they are made. *See FTC v. Direct Mktg. Concepts*, 569 F. Supp. 2d 285, 300, 303 (D. Mass. 2008), *aff'd*, 624 F.3d 1 (1st Cir. 2010); *FTC* v. *Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190, 1202 (N.D. Ga. 2008), *aff'd,* 356 Fed. Appx. 358 (11th Cir. 2009); FTC v. *Natural Solution, Inc.,* No. CV 06-6112-JFW, 2007-2 Trade Cas. (CCH) P75,866, 2007 U.S. Dist. LEXIS 60783, at *11-12 (C.D. Cal. Aug. 7, 2007). More generally, to make or exaggerate such claims,

whether directly or indirectly, through the use of a product name, website name, metatags, or other means, without rigorous scientific evidence sufficient to substantiate the claims, violates the FTC Act. *See In re Daniel Chapter One*, No. 9239, slip op. 18-20, 2009 WL 516000 (F.T.C.), 17-19 (Dec. 24, 2009) http://www.ftc.gov/os/adjpro/d9329/091224commissionopinion.pdf, pet. for review den., 2010 WL 5108600 (D.C. Cir. Dec. 10, 2010).

57.    The claims made by Ultra Lab regarding THE BEAST Anabolic Activator clearly demonstrate that this product qualifies as a drug as defined by section 201(g)(1) of the Act [21 U.S.C. § 321(g)(1)], because it is intended to affect the structure or any function of the body. Further, THE BEAST Anabolic Activator is a "new drug" within the meaning of section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for the intended uses. Under sections 301(d) and 505(a) of the Act [21 U.S.C. §§ 331(d) and 355(a)], a new drug may not be introduced or delivered for introduction into interstate commerce unless an application approved by FDA under either section 505(b) or (j) of the Act [21 U.S.C. § 355(b) or (j)] is in effect for the product. Upon information and belief, there is no FDA-approved application on file for the above product. Therefore, any marketing of THE BEAST Anabolic Activator without an approved application constitutes a violation of these provisions of the Act.

58.     Ultra Lab claims THE BEAST Anabolic Activator is a Homeopathic drug product although its labeling identifies this product as a hybrid homeopathic drug and dietary supplement. The definition of "drug" in section 201(g)(1) of the Act [21 U.S.C. § 321(g)(1)] includes articles recognized in the official Homeopathic Pharmacopeia of the United States (HPUS), or any supplement to it. Homeopathic drugs are subject to the same regulatory requirements as other drugs; nothing in the Act exempts homeopathic drugs from any of the regulatory requirements related to adulteration, labeling, misbranding, or approval. Although many homeopathic drugs are manufactured and distributed without FDA approval under enforcement policies set out in the Agency's Compliance Policy Guide entitled "Conditions Under Which Homeopathic Drugs May be Marketed (CPG 7132.15)" (the CPG). As its title suggests, the CPG identifies specific conditions under which homeopathic drugs may ordinarily be marketed; thus, in order to fall under the enforcement policies set forth in the CPG, a homeopathic product must meet the conditions set forth in the CPG. The CPG defines a homeopathic drug as: "Any drug labeled as being homeopathic which is listed in the Homeopathic Pharmacopeia of the United States (HPUS), an addendum to it, or its supplements."

59.     According to the container label, THE BEAST Anabolic Activator contains HCG (human chorionic gonadotropin) as its active ingredient. HCG is not an established homeopathic active ingredient included in the HPUS or any of the

addenda or supplements. Furthermore, HCG is not listed in any recognized materia medica containing information on the preparation of homeopathic medicines. Therefore, HCG is not considered a homeopathic drug ingredient and THE BEAST Anabolic Activator is not considered a homeopathic drug product under the CPG. Accordingly, the policies set forth in the CPG for the marketing of homeopathic drug products do not apply to THE BEAST Anabolic Activator - making its sales fraudulent and illegal.

60.    Furthermore, THE BEAST Anabolic Activator is a prescription drug under section 503(b)(1) of the Act [21 U.S.C. § 353(b)(1)]. Section 503(b)(1) of the Act [21 U.S.C. § 353(b)(1)] provides that a drug which "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug" shall be dispensed only upon a prescription by a practitioner licensed by law to administer such drug. THE BEAST Anabolic Activator label provides that the product should be taken in conjunction with physical activities. Because it is subject to section 503(b)(1) of the Act, THE BEAST Anabolic Activator "is misbranded under section 503(b)(4) of the Act [21 U.S.C. § 353(b)(4)] in that its label fail to bear the symbol, "Rx only." The marketing of this misbranded product violates sections 301(a) and (k) of the Act [21 U.S.C. §§ 331(a) and (k)].

61.     In addition, under section 201(ff)(3)(B) of the Act [21 U.S.C. § 321 (ff)(3)(B)], dietary supplements cannot contain an article that is approved as a new drug under section 505, which was not marketed as a dietary supplement or food prior to FDA approval of such drug. FDA approved Pregnyl, which contains HCG as the active ingredient, as a new drug on October 20, 1976. HCG was not marketed as a dietary supplement or food prior to FDA approval of Pregnyl. As such, a product containing HCG could not be a dietary supplement.

62.     Based on the labeling and marketing claims, THE BEAST products are drugs under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)], because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man, and under section 201(g)(1)(C) of the Act [21 U.S.C. § 321(g)(1)(C)], because they are intended to affect the structure or function of the body.

63.     Section 503(b)(1) of the FD&C Act [21 U.S.C. 353(b)(1)] identifies criteria for determining the prescription status of a product. THE BEAST products are properly classified as prescription drugs within the meaning of section 503(b)(1) of the FD&C Act because they are intended to treat diseases that require diagnosis and treatment by a physician or are intended to provide treatment for symptoms usually caused by an underlying disease process that requires diagnosis and treatment by a physician. Because they may be dispensed only by prescription of a

licensed practitioner, these products are misbranded under Section 503(b)(4) of the FD&C Act (21 U.S.C. § 353(b)(4)) in that their labels fail to bear the symbol, "Rx only."

64.     THE BEAST Anabolic Activator is also misbranded within the meaning of section 502(f)(1) of the FD&C Act [21 U.S.C. § 352 (f)(1)] in that their labeling fails to bear adequate directions for use as defined in 21 C.F.R. § 201.5. The indications for which the products listed above are labeled and marketed are not appropriate for OTC use. If an indication requires the supervision of a practitioner licensed to prescribe drugs, adequate directions for use cannot be written for an OTC drug product for that indication.

65.     Furthermore, THE BEAST Anabolic Activator is misbranded within the meaning of section 502(a) of the FD&C Act [21 U.S.C. 352 (a)] in that the labeling is false or misleading because the labeling represents the products as suitable for use by consumers to treat conditions which the FDA has found not appropriate for OTC drug treatment. The marketing of the misbranded drug products THE BEAST violates sections 301(a) of the FD&C Act [21 U.S.C. § 331(a)].

66.     Ultra Lab attempts to label THE BEAST Anabolic Activator as homeopathic drugs with active ingredients measured in homeopathic strengths. The definition of "drug" in section 201(g)(1) of the FD&C Act [21 U.S.C. § 321(g)(1)] includes articles recognized in the official Homeopathic Pharmacopeia of the United

States (HPUS), or any supplement to it. Homeopathic drugs are subject to the same regulatory requirements as other drugs; nothing in the FD&C Act exempts homeopathic drugs from any of the requirements related to adulteration, labeling, misbranding, or approval. Homeopathic products offered for conditions not amenable to OTC use must be marketed as prescription products.

67.    Defendants' product HGC Human Growth Complex is claimed to be a unique formulation of potentized ingredients specifically formulated to help accelerate metabolic growth and recovery without the unwanted side-effects normally attributed to illegal anabolic formulations.

68.    Ultra Lab claims the product contains *Growth Hormone* and *Insulin-like Growth Factor-1 (IGF-1)* as well as other powerful ingredients that work in synergy with the body to maximize gains, help provide maximum recovery, and to help achieve overall human enhancement.

69.    Ultra Lab also claims that the HGC Human Growth Complex product is a favorite of competitive athletes including strength and endurance athletes.

70.    Ultra Lab claims that HGC Human Growth Complex is commonly used by bodybuilders, powerlifters and other strength athletes.

71.    Ultra Lab claims Runners, cyclists, swimmers and others that rely on endurance use the product with great success.

72.     Ultra Lab also claims that the HGC Human Growth Complex product is not just for the hardcore athlete and claims that men and women of all ages use the product to help promote wellness, vitality and rejuvenation.

73.     Ultra Lab claims: "Whether you are a hardcore athlete looking for a competitive edge or just someone interested in looking and feeling healthier, the HGC Human Growth Complex Formula is right for you."

74.     Ultra Lab claims that the HGC Human Growth Complex product contains the following Ingredients: Somatotrophine (Growth hormone)12X, Insulin-like Growth Factor-1 (IGF-1), 12X, Alfalfa 3X, Arnica montana 15X, Arsenicum album 15X, Baptisia tinctoria 15X, Bryonia 15X, Cinchona officinalis 15X, Gelsemium sempervirens 15X, Lacticum acidum 15X, Lycopodium clavatum 15X, Phosphorus 15X, Rhus toxicodendron 15X, Ruta graveolens 10X.

75.     Ultra Lab's advertising for the HGC Human Growth Complex product states: "The science of homeopathic medicine (homeopathy) has existed even longer than our current form of medicine known as 'western medicine'. Homeopathy is popularly practiced in Australia, Mexico, Europe, India, and South America. For political reasons, homeopathy is not as widely practiced in the United States since homeopathic medications cannot be patented. However, homeopathy's popularity is growing rapidly here because of the safety and effectiveness of the medications and due to the rising cost of healthcare. Ultra Lab Nutrition, specializing in the most

powerful legal sports nutrition supplements on the market, presents its newest anabolic... Human Growth Complex™... a powerful compound specifically formulated to accelerate muscle growth and recovery through Homeopathic means. This product is manufactured under the stringent guidelines of the Homeopathic Pharmacopoeia of the United States (H.P.U.S.) The homeopathic medications in Human Growth Complex work in synergy to accelerate muscle growth and recovery without the adverse side effects normally attributed to illegal anabolics. Faster muscle recovery means faster, easier muscle growth. For those individuals who have difficulty in gaining weight, Human Growth Complex stimulates appetite and aids the body in nutrient absorption. Of special interest to strength athletes is the fact that Human Growth Complex dramatically strengthens connective tissue including ligaments and tendons. Stronger connective tissue leads to immediate strength increases. Other benefits derived from Human Growth Complex include supporting healthy muscles and joints, increased energy and stamina, and greater concentration and focus."

76.    Ultra Lab's marketing of the HGC Human Growth Complex product also claims: "Anything Stronger Is Illegal! Ultra Lab Nutrition, specializing in the most powerful legal sports nutrition supplements on the market, presents its newest anabolic... Human Growth Complex™... a powerful compound specifically formulated to accelerate muscle growth and recovery. The ingredients in Human

Growth Complex work in synergy to accelerate muscle growth and recovery without the adverse side effects normally attributed to illegal anabolics. Faster muscle recovery means faster, easier muscle growth. For those individuals who have difficulty in gaining weight, Human Growth Complex stimulates appetite and aids the body in nutrient absorption. Of special interest to strength athletes is the fact that Human Growth Complex dramatically strengthens connective tissue including ligaments and tendons. Stronger connective tissue leads to immediate strength increases. Other benefits derived from Human Growth Complex include supporting healthy muscles and joints, increased energy and stamina, and greater concentration and focus."

77.    The labeling for the HGC Human Growth Complex product identifies it as containing Somatotrophine (Growth hormone)12X and Insulin-like Growth Factor-1 (IGF-1). Many homeopathic drug products are manufactured and distributed without FDA approval under enforcement policies set out in FDA's Compliance Guide entitled, "Conditions under Which Homeopathic Drugs May be Marketed (CPG 7132.15)" (the CPG). The CPG defines a homeopathic drug as: "Any drug labeled as being homeopathic which is listed in the Homeopathic Pharmacopeia of the United States (HPUS), an addendum to it, or its supplements. The potencies of homeopathic drugs are specified in terms of dilution." Further, the

CPG states that drug products containing homeopathic ingredients *in combination with non-homeopathic active ingredients are not homeopathic drug products*.

78.     Defendants' product HGC Human Growth Complex contains ingredients that are not recognized as active ingredients in the HPUS or any of the addenda or supplements. Furthermore, none of these ingredients are listed in any recognized materia medica containing information on the preparation of homeopathic medication.

79.     Therefore, the listed ingredients are not homeopathic ingredients and HGC Human Growth Complex is not considered as a homeopathic drug under the CPG. Accordingly, the policies set forth in the CPG for the marketing of homeopathic drug products do not apply to this product. Therefore, Defendants' HGC Human Growth Complex product is a new drug as defined by section 201(p) of the Act, [21 U.S.C. § 321(p)]. Since the product is not the subject of an approved new drug application, its marketing in the United States violates sections 505(a) of the Act, [21 U.S.C. § 355(a)].

80.     Distribution of products containing human growth hormones also violate section 303(e)(1) of the Act, [21 U.S.C. § 333(e)(1)]. Defendants' HGC Human Growth Complex product is being promoted and distributed on websites for unapproved uses. There are no human growth hormone products that are approved by the FDA for increasing lean muscle mass, acceleration of muscle growth and

recovery, gaining weight, stimulating appetite, dramatically strengthens connective tissue including ligaments and tendons, supporting healthy muscles and joints, increased energy and stamina, and greater concentration and focus. Section 303(e)(1) of the Act, [21 U.S.C. § 333(e)(1)] states that "whoever knowingly distributes, or possesses with intent to distribute, human growth hormone for any use in humans other than the treatment of a disease or other recognized medical condition, where such use has been authorized by the Secretary of Health and Human Services under 21 U.S.C. § 355 and pursuant to the order of a physician, is guilty of an offense, punishable by not more than 5 years in prison, such fines as are authorized by Title 18, United States Code, or both." Defendants possess, promote, and distribute the HGC Human Growth Complex product as containing human growth hormones and thus for unapproved uses and the Defendants' conduct therefore violates 21 U.S.C. § 333(e)(1).

81.    Further, since the adequacy of the indications for the labeled uses for Defendants' HGC Human Growth Complex product has not been established, the product is misbranded under section 502(f)(1) of the Act [21 U.S.C. § 352(f)(1)].

82.    In addition, Defendants' HGC Human Growth Complex product is misbranded under section 502(0) of the Act [21 U.S.C. § 352(o)], because it was not manufactured, prepared, propagated, compounded or processed in an establishment

duly registered under section 510 of the Act (21 U.S.C. § 360), nor was it included in a list required by section 510(j) of the Act (21 U.S.C. § 360(j)).

83.     Based on the labeling claims, Defendants' HGC Human Growth Complex products are drugs under section 201(g)(1)(B) of the Act (21 U.S.C. § 321(g)(1)(B)), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man, or under section 201(g)(1)(C) of the Act (21 U.S.C. § 321(g)(1)(C)), because they are intended to affect the structure or any function of the body.

84.     The HGC Human Growth Complex product is a "new drug" within the meaning of section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for its intended uses. Under sections 301(d) and 505(a) of the Act [21 U.S.C § 33l(d) and 355(a)], a new drug may not be introduced or delivered for introduction into interstate commerce unless an application approved by FDA under either section 505(b) or (j) of the Act [21 U.S.C. § 355(b) or (j)] is in effect for the product. Upon information and belief, there is no FDA-approved application on file for Defendants' HGC Human Growth Complex product. Therefore, the marketing of these products without approved applications constitutes a violation of these provisions of the Act.

85.     The HGC Human Growth Complex product is labeled as a homeopathic drug with active ingredients measured in homeopathic strengths. The

definition of "drug" in section 201(g)(1) of the Act [21 U.S.C. § 321(g)(1)] includes articles recognized in the official Homeopathic Pharmacopeia of the United States (HPUS), or any supplement to it. Homeopathic drugs are subject to the same regulatory requirements as other drugs; nothing in the Act exempts homeopathic drugs from any of the requirements related to adulteration, labeling, misbranding, or approval. Many homeopathic drugs are manufactured and distributed without FDA approval under enforcement policies set out in the Agency's Compliance Policy Guide entitled, "Conditions Under Which Homeopathic Drugs May be Marketed (CPG 7132.15)" (the CPG). As its title suggests, the CPG identifies specific conditions under which homeopathic drugs may ordinarily be marketed; thus, in order to fall under the enforcement policies set forth in the CPG, a homeopathic product must meet the conditions set forth in the CPG. The CPG defines a homeopathic drug as: "Any drug labeled as being homeopathic which is listed in the Homeopathic Pharmacopeia of the United States (HPUS), an addendum to it, or its supplements." The CPG also states that "[d]rug products containing homeopathic ingredients in combination with non-homeopathic active ingredients are not homeopathic drug products." Therefore, the HGC Human Growth Complex product is being illegally marketed and sold fraudulently to the detriment of Hi-Tech.

III.    **Defendants' False And Misleading Advertising Practices**

86.    In addition to THE BEAST Anabolic Activator and HGC Human Growth Complex products, Ultra Lab sells other dietary supplements including Human Growth Complex Rejuvenation Formulation for Men that violates the law with the same fraudulent practices listed above.

87.    Defendants' THE BEAST Anabolic Activator product and HGC Human Growth Complex product, and Human Growth Complex Rejuvenation Formulation products directly compete with Hi-Tech's DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products in the dietary supplement sub-markets of testosterone boosters, muscle-gainers, protein products, muscle preservation products, and legal hormone boosters.

88.    In attempt to gain an advantage in these markets, Defendants falsely and misleadingly advertised the THE BEAST Anabolic Activator and HGC Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products by comparing and/or equating said products to illegal anabolics.

89.    In attempt to gain an advantage in these markets, Defendants falsely and misleadingly advertised the HGC Human Growth Complex, and Human Growth Complex Rejuvenation Formulation Pituitary by comparing and/or equating said product to human growth hormone (hGH).

90.     Upon information and belief, Defendants market, advertise, distribute, and sell Ultra Lab's THE BEAST Anabolic Activator and HGC Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products throughout the State of Georgia, in this District, and across the United States.

91.     Upon information and belief, Altieri authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the false advertising, in violation of the Lanham Act and the Food, Drug, and Cosmetics Act ("FDCA").

92.     In marketing and advertising THE BEAST Anabolic Activator and Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products to consumers on their websites identified herein, Defendants have made false and misleading claims comparing and/or equating the THE BEAST Anabolic Activator and HCG Human Growth Complex, and Human Growth Complex Rejuvenation Formulation to illegal anabolics or hGH.

93.     This deception is calculated to further mislead the consuming public thereby providing a further competitive advantage by fraud.

94.      Defendants' false product claims and fraudulent activities pertaining to their THE BEAST Anabolic Activator and HGC Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products, as described herein, deceived consumers as to the content, quality, characteristics, and/or ingredients of

THE BEAST Anabolic Activator product and HCG Human Growth Complex product, and Human Growth Complex Rejuvenation Formulation products, and caused and enabled consumers to purchase said product instead of Hi-Tech's products.

95.     Defendants' false and misleading product claims, as described herein, render the THE BEAST Anabolic Activator and HGC Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products "misbranded" and violative of the FDCA. *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

96.     As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of Ultra-Lab, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products.

97.     In marketing and advertising their HGC Human Growth Complex products to consumers on websites on the internet, Defendants' have made false and misleading claims comparing and/or equating the HGC Human Growth Complex to *illegal* hGH products and illegal anabolics.

27

98.     In making these representations, Defendants are deliberately attempting to mislead consumers in to believing they are purchasing human growth hormone (hGH) or its equivalent.

99.     hGH is a naturally occurring hormone secreted by the pituitary gland, and is only available by prescription by a supervising physician for clearly and narrowly defined indications. *See* 21 U.S.C. § 333(e).

100.   Upon information and belief, contrary to Defendants' representations, Defendants' HGC Human Growth Complex products contains only herbs and 12X watered down Somatotrophine (Growth hormone) and Insulin-like Growth Factor-1 (IGF-1), which are not remotely comparable to hGH.

101.    The herbs and 12X watered down Somatotrophine (Growth hormone) and Insulin-like Growth Factor-1 (IGF-1), in the HGC Human Growth Complex products could not have any effects equivalent or similar to that of hGH, rendering Defendants' statements false and misleading.

102.   Defendants also make several generalized statements which falsely and misleadingly compare and/or equate their products to illegal anabolic and/or hGH.

103.   Thus, as set forth herein, Defendants are falsely and misleadingly representing that the subject products are the comparable and/or the equivalent to illegal anabolics and/or hGH.

104.   Defendants' false and misleading product claims, as described herein, render the THE BEAST Anabolic Activator and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products "misbranded" and violative of the FDCA. *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

105.   Defendants' false product claims and fraudulent activities described herein deceived consumers as to the content, quality, characteristics, and/or ingredients of THE BEAST Anabolic Activator and Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products, and caused and enabled consumers to purchase said products instead of Hi-Tech's DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products.

106.   As set forth herein, Defendants have made, and continue to make, statements in violation of 21 U.S.C. §§ 331(a) & 343(a) with respect to their THE BEAST Anabolic Activator and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products. To the extent Defendants' misbranding in violation of these Sections render the aforementioned products "drugs" and "new drugs" as defined by 21 USC 321(g) & (p), Defendants have illegally introduced "new" and "misbranded" drugs into interstate commerce in violation of 21 U.S.C. §§ 331(d), 352, and 355(a).

107.  In committing these violations, Defendants have gained an improper competitive advantage and sell, and have sold, THE BEAST Anabolic Activator and Human Growth Complex, and Human Growth Complex Rejuvenation Formulation products in a deceptive and uncompetitive manner.

108.  As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of Ultra Lab, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its products.

109.  Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

## COUNT I

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
### *Against Ultra Lab and Altieri*

110.  Hi-Tech incorporates by reference all previous factual allegations. as though fully set forth herein.

111.  Ultra Lab advertised, marketed, and offered for sale and/or sold the fraudulent and illegal products described above in or affecting interstate commerce including THE BEAST Anabolic Activator and HGC Human Growth Complex

products, and Human Growth Complex Rejuvenation Formulation products to the consuming public in direct competition with Hi-Tech.

112. Ultra Lab's conduct constitutes unfair competition and introduction into commerce of a false designation of origin, or false description or representation of the origin or sponsorship of its product in violation of 15 U.S.C. § 1125(a).

113. Ultra Lab has engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

114. The unlawful and willful conduct of Ultra Lab has caused and is causing Hi-Tech irreparable injury and monetary damages.

115. In accordance with 15 U.S.C. § 1117(a) Hi-Tech should be awarded its actual damages, costs and attorney's fees, and Defendants' profits derived from its infringing activities. If this Court determines that Defendants have engaged in these unlawful activities knowingly and willfully, then Hi-Tech should be awarded three times Defendants' profits from its unlawful activities.

116. Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' activities will continue unless enjoined by this Court.

## COUNT II

### FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)
### *Against Mr. Altieri and Ultra Lab*

117. Hi-Tech incorporates by reference all previous factual allegations as though fully set forth herein.

118.   Defendants have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products.

119.   The use of such false and misleading descriptions of fact has actually deceived or has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics. By failing to accurately describe the product and its ingredients prominently on their websites, Defendants have misled consumers.

120.   Defendants' false and misleading descriptions of fact are material and are likely to influence purchasing decisions of THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products.

121.   Defendants have introduced their false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

122.   Hi-Tech has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants and the loss of goodwill in Hi-Tech's products. Indeed, Defendants' conduct is a black eye

on Hi-Tech and the dietary supplement industry as a whole, and has the tendency to disparage Hi-Tech's products and goodwill.

123.   Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, ability to compete, and goodwill in its DIANABOL®, ANAVAR®, BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products for which there is no adequate remedy at law. Hi-Tech, therefore, is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further actions of false advertising, and ordering removal of all Defendants' false advertisements.

124.   Pursuant to 15 U.S.C. § 1117, Hi-Tech is entitled to recover from Defendants damages in addition to Defendants' gains, profits, and advantages that they have obtained as a result of their acts set forth herein. Plaintiff is at present unable to ascertain the full extent of monetary damages it has sustained by reason of Defendants' acts.

125.   Moreover, Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, entitling Plaintiff to recover additional damages and reasonable attorney fees.

## COUNT III

**VIOLATION OF THE GEORGIA DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT, O.C.G.A. §10-1-372 (a)**
*Against ULTRA-LAB and Altieri*

126.   Hi-Tech incorporates by reference all previous factual allegations as
though fully set forth herein.

127. Hi-Tech's    DIANABOL®,    ANAVAR®,    BULASTERONE®,
PHOSPHAGEN, NITROPRO®, and SOMATOMAX® products, and the goodwill
and brand of the business associated with it, are of great and incalculable value, are
highly distinctive and not subject to attack, and have become universally associated
in the public mind with the products and services of the highest quality and
reputation emanating from Hi-Tech.

128.   Without Hi-Tech's authorization or consent, and having knowledge of
Hi-Tech's well-known and prior rights in the DIANABOL®, ANAVAR®,
BULASTERONE®, PHOSPHAGEN, NITROPRO®, and SOMATOMAX®
DIANABOL® products, Defendants advertised, marketed, and offered for sale
and/or sold the fraudulent and illegal products under the names THE BEAST
Anabolic Activator and HGC Human Growth Complex and Human Growth
Complex Rejuvenation Formulation to the consuming public in direct competition
with Hi-Tech.

129.   Defendants have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products.

130.   The use of such false and misleading descriptions of fact has actually deceived or has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics. By failing to accurately describe the product and its ingredients prominently on their websites, Defendants have misled consumers.

131.   Defendants' false and misleading descriptions of fact are material and are likely to influence purchasing decisions of the THE BEAST Anabolic Activator and HGC Human Growth Complex products, and HGC Human Growth Complex Rejuvenation Formulation products.

132.   Upon information and belief, Altieri authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the foregoing activities.

133.   Defendants' false advertising uses deceptive representations in violation of O.C.G.A. 10-1-372.

134.   Defendants' marketing of the THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and HGC Human Growth

Complex Rejuvenation Formulation products on substantially similar goods marketed and distributed by Defendants and false advertising represents that their goods have characteristics, ingredients, uses, benefits, or quantities that they do not have in violation of O.C.G.A. 10-1-372 (a)(5).

135.   Defendants' false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products results in a representation that their goods are of a particular standard, quality, or grade in violation of O.C.G.A. 10-1-372 (a)(7).

136.   Defendants' false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products advertise their goods with an intent not to sell them as advertised in violation of O.C.G.A. 10-1-372 (a)(9).

137.   Defendants' actions create a likelihood of confusion or of misunderstanding in the consuming public, in violation of O.C.G.A. 10-1-372 (a)(12).

138.   The unlawful and willful conduct of Ultra Lab has caused and is causing Hi-Tech irreparable injury and monetary and non-monetary damages.

139.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

## COUNT IV

### GEORGIA UNFAIR COMPETITION
#### *Against ULTRA-LAB and Altieri*

140.   Hi-Tech incorporates all previous allegations as though fully set forth herein.

141.   Defendants' marketing and use of the THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products is likely to cause confusion, mistake, and deception to consumers.

142.   As set forth herein, Defendants made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products in order to improperly gain a competitive advantage.

143.   Upon information and belief, Altieri authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the foregoing activities.

144.   Defendants' aforesaid activities constitute unfair competition, in violation of Georgia unfair common law.

145.   Defendants have engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

146.   The unlawful and willful conduct of Ultra Lab has caused and is causing Hi-Tech irreparable injury and monetary damages.

147.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

148.   Defendants' acts entitle Hi-Tech to both compensatory damages in an amount to be determined at trial and punitive damages under the common law and O.C.G.A. § 51-12-5.1.

## COUNT V

**GEORGIA RICO CLAIM**
**VIOLATION OF O.C.G.A. § 16-14-4(a)**
*Against Altieri and ULTRA LAB*

149.   Hi-Tech incorporates all previous allegations as though fully set forth herein.

150.   Mr. Altieri is a "person" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-1, *et seq.*

151.   Hi-Tech Pharmaceuticals, Inc. is a "person" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-1, *et seq.*

152.   Both Ultra Lab and USA Nutraceuticals Group, Inc., is an "enterprise" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-3(6).

153.   Mr. Altieri is employed by or associated with the USA Nutraceuticals Group, Inc. and Ultra-Lab within the meaning of the Georgia RICO Law. O.C.G.A. §16-14-4(b).

154.   In committing the acts described above, the Defendants, and their officers, agents, and employees repeatedly acted in furtherance of an unlawful scheme and endeavor, that was continuously executed by them throughout a time period from on or about a date unknown but at least in or about 2014, and continuing through the current date.

155.   From on or about a date unknown but at least in or about 2014, and continuing through the current date, the Defendants herein did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

156.   The unlawful scheme included a scheme or artifice to defraud Hi-Tech out of sales and profits through false and misleading descriptions of fact concerning the nature, characteristics and qualities of its THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products.

157. In committing the acts described above, Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and

employees, repeatedly acted in furtherance of the unlawful scheme through a pattern of racketeering activity.

158.   Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly caused letters, packages, and other matters and things to be deposited with and delivered by the United States Postal Service and/or interstate couriers to each other and others in repeated violation, or attempted violation, of 18 U.S.C. § 1341 (mail fraud).  Defendants specifically used the United States Postal Service and/or interstate couriers to ship the THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products to purchasing consumers throughout the United States.

159.   To the extent that any of the Defendants did not participate directly in these acts of mail fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1341 and in violation of O.C.G.A. § 16-2-20.

160.   Defendants, and their officers, agents, and employees, could reasonably foresee the uses of the United States Postal Service and interstate couriers in connection with the execution of these unlawful schemes. All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the

violations alleged in this Complaint. In this regard, the Defendants, to include individual defendants, corporations and law firms have purposely directed tortious and fraudulent conduct toward the State of Georgia and Hi-Tech.

161.   Each of these "mailings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. §§ 16-14-3(4)(A) and (5)(C).

162.   In furtherance of these unlawful schemes, and for the purpose of executing, and attempting to execute these schemes, Defendants and their officers, agents, and employees, repeatedly utilized the internet and email communications, in repeated violation, or attempted violation, of 18 U.S.C. § 1343 (wire fraud). Defendants specifically used the internet and email communication to electronically disseminate its illegal and fraudulent THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation products to enable the online purchase of THE BEAST Anabolic Activator products and HGC Human Growth Complex products, and Human Growth Complex Rejuvenation Formulation by consumers throughout the United States.

163.   To the extent that any of the Defendants did not participate directly in these acts of wire fraud, they knowingly and willfully caused, aided, abetted,

advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1343 in violation of O.C.G.A. § 16-2-20.

164.   Each of the Defendants and their officers, agents, and employees, could reasonably foresee the uses of the interstate wire communications in connection with the execution of these unlawful schemes. All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint. In this regard, the Defendants, to include individual defendants, corporations and law firms have purposely directed tortuous and fraudulent conduct toward the State of Georgia and Hi-Tech.

165.   Each of these "interstate wirings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. § 16-14-3(4)(A) and 5(C).

166.   Each of these acts of racketeering activity was authorized, requested, commanded, performed, or recklessly tolerated by Defendant Altieri , and was done in furtherance of the execution of the unlawful schemes designed to defraud Hi-Tech out of sales and profits.

167.   Hi-Tech anticipates that in furtherance of the execution of this unlawful scheme, Defendants and their officers, agents, and employees will violate the perjury and false swearing statutes of this state, O.C.G.A. §§ 16-10-70 (perjury) and 16-10-71 (false swearing) in addition to the federal statutes 18 U.S.C. §§ 1621 (perjury)

and 1001 (false statements). Each violation of these statutes constitutes, or will when committed constitute, an additional separate incident of racketeering under Georgia RICO.

168.   The multiple acts of racketeering activity by the Defendants and their officers, agents, and employees were interrelated, were and are part of a common and continuous pattern of racketeering activity to include fraudulent acts and schemes, which were and are acts perpetrated for the same or similar purposes, and were and are not a series of disconnected, isolated or sporadic acts. These acts were and are part of the regular and routine way the Defendants conduct their business. The multiple racketeering acts by the Defendants and their officers, agents, and employees constitute a "pattern of racketeering activity" as defined in O.C.G.A. § 16-14-3(4)(A) and (5).

169.   By reason of the foregoing, the Defendants, and their officers, agents, and employees, directly and indirectly, acquired or maintained control of property, *i.e.* profits diverted from Hi-Tech as well as profits which were generated by virtue of the mail and wire fraud executed against Hi-Tech, through a pattern of racketeering activity in violation of the Georgia RICO Act (O.C.G.A. § 16-14-4(a)).

170.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(a) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT VI

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(b)
### *Against Altieri and ULTRA-LAB*

171.  Hi-Tech incorporates all previous allegations as though fully set forth herein.

172.  By reason of the foregoing, the Defendants and their managerial officials, agents, and employees, have unlawfully, knowingly and willfully conducted and participated in, directly or indirectly, the affairs of Ultra Lab through a pattern of racketeering activity in violation or attempted violation of O.C.G.A. § 16-14-4(b).

173.  As a direct and proximate result of these violations of O.C.G.A. §16-14-4(b) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT VII

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(c)
### *Against Altieri and ULTRA-LAB*

174.  Hi-Tech incorporates all previous allegations as though fully set forth herein.

175.  By reason of the foregoing circumstances and events, Defendants

individually and collectively knowingly and willfully, combined, colluded, conspired, attempted, endeavored, and continue to combine, collude, conspire, and endeavor, to violate the provisions of O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c).

176.    Defendants committed overt acts and preparatory acts to effect the objects of the conspiracy or endeavor as specified in all of the paragraphs preceding this Count. Each of these overt or preparatory acts is a racketeering act. O.C.G.A. § 16-14-3(5).

177.    As a direct and proximate result of these violations of O.C.G.A. § 16-14-4(c) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Hi-Tech prays for judgment against Defendants as follows:

1.    That ULTRA LAB be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Ultra Lab's products.

2.    That Mr. Altieri be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading

statements of fact that misrepresent the nature, quality, and characteristics of the Ultra Lab's products.

3.     That Hi-Tech be awarded damages Hi-Tech has sustained as a consequence of Defendants' conduct.

4.     That Hi-Tech be awarded Defendants' profits obtained by Defendants as a consequence of Defendants' conduct.

5.     That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act.

6.     That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118.

7.     That Ultra Lab be adjudged to have unlawfully and unfairly competed against Hi-Tech under the laws of the State of Georgia, §10-1-372 (a).

8.     That judgment be entered against Defendants for such sums as compensatory damages, trebled, as the evidence shall show the Plaintiff to be justly entitled to recover pursuant to O.C.G.A. § 16-14-6(c), as well as punitive damages for deterrence in an amount sufficient to keep such wrongful conduct from being repeated, attorney's fees and litigation expenses, interest, if applicable, and all costs of this action.

9.      That this Court enter any orders or judgments against any or all of the

Defendants as are authorized in O.C.G.A. §16-14-6(a).

10.     That Hi-Tech recover punitive damages as provided by law.

11.     That Hi-Tech recover its costs and reasonable attorney fees.

12.     That Hi-Tech be granted prejudgment and post judgment interest.

13.     That Hi-Tech have such other and further relief as the Court deems just

and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable

law, Hi-Tech requests a trial by jury on all issues so triable.

Dated: December 10, 2015

Respectfully submitted,


*S/ Edmund J. Novotny*
Edmund J. Novotny, Jr.
Georgia Bar No. 547338
Charles R. Bridgers
Georgia Bar No. 080791
*Attorney for Hi-Tech*
*Pharmaceuticals, Inc.*

101 Marietta Street
Suite 3100
Atlanta, Georgia 30303
Tel: 404-979-3150
Fax: 404-979-3170
ednovotny@dcbflegal.com
charlesbridgers@dcbflegal.com